UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

---

KRISTIE PETREA, individually and on behalf of all
others similarly situated,

                               Plaintiffs,

    v.

MIDNIGHT EXPRESS AUTO RECOVERY, INC.,
STACEY WILLETTE, and
TONY WILLETTE,

                               Defendants.

Case No.   3:22cv415

FLSA/VOWA Collective Action
Demand for Jury Trial

---

## COMPLAINT

---

Plaintiff Kristie Petrea, individually and on behalf of all others similarly situated ("Plaintiff"), respectfully moves for judgment against Defendants Midnight Express Auto Recovery, Inc., Stacey Willette, and Tony Willette (individually or collectively, "MEAR" or "Defendants") as follows:

### I.    SUMMARY OF ACTION

1.    This is a claim for unpaid overtime compensation in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA") and the Virginia Overtime Wage Act, VA Code, § 40.1-29.2 ("VOWA"), arising out work that Plaintiff, and others similarly situated, performed as employees of Defendants, and a claim that MEAR misclassified its employees as independent contractors in violation of the Virginia Misclassification Law, VA Code § 40.1-28.7:7 ("VML"). Plaintiff also individually asserts a

1

claim that MEAR terminated her for reporting to a supervisor that MEAR was violating the law by misclassifying her as an independent contractor when she was really an employee, and/or for refusing to sign a document incorrectly calling her an independent contractor when she was really an employee under the law, in violation of the Virginia Whistleblower Protection Law, VA Code § 40.1-27.3 ("VWPL"), the FLSA's antiretaliation provision, and the Virginia public policy underlying numerous statutes. The FLSA and VOWA claims are brought against all three Defendants, individually, collectively, jointly, and severally. The wrongful discharge in violation of public policy claim is brought against Defendants MEAR and Stacey Willette, individually, collectively, jointly, and severally. The VML and VWPL are brought against Defendant MEAR only.

2.      Plaintiff alleges Defendants have violated and continue to violate the FLSA and VOWA through their practice of not paying overtime compensation to Plaintiff and other similarly situated employees when they work more than 40 hours in a week.

3.      Plaintiff worked for MEAR as a member of its office staff in a position called "Case Worker." Other office staff include Case Workers, the Receptionist, Office Assistant, and a Transport Coordinator ("Office Staff"). All Office Staff are paid on an hourly basis, work together in MEAR's office, and are supervised by MEAR's Chief Operating Officer and President.

4.      MEAR misclassifies all of its employees as independent contractors. After hiring each employee, MEAR creates an LLC for each employee, instructs the employee to open a bank account in the name of the LLC, and then pays the LLC instead of the employee.

5.      Instead of paying the required overtime premium when employees work more

than 40 hours in a week, Defendants pay only straight time for overtime.

6.      Instead of MEAR paying employer-side payroll taxes or providing the employees with insurance or other employee benefits, Defendants' misclassification results in the employees having to bear those costs.

7.      At no time during Plaintiff's 11-year employment did Defendants post the required notice of employee FLSA rights. Accordingly, Plaintiff and similarly situated employees are entitled to equitable tolling of the statute of limitations for FLSA claims going back to the beginning of Plaintiff's and similarly situated employees' employments.

8.      The FLSA Collective is made up of all persons who have been employed by Defendants as Office Staff, including Case Workers, Receptionists, Office Assistants, and Transport Coordinators, or in a comparable position, within three years prior to this action's filing, or longer if equitable tolling is granted, to the trial of this action (the "FLSA Collective Period").

9.      Plaintiff, on behalf of herself and all similarly situated employees, seeks unpaid overtime wages, liquidated damages, pre and post judgment interest, attorneys' fees and costs, and all relief allowed by law arising out of the Defendants' FLSA violations.

10.      The VOWA Collective is made up of all persons who have been employed by Defendants as Office Staff, including Case Workers, Receptionists, Office Assistants, and Transport Coordinators, or in a comparable position, at any time from July 1, 2021 to the trial of this action (the "VOWA Collective Period").

11.      Plaintiff, on behalf of herself and others similarly situated, seeks unpaid overtime wages, liquidated damages, triple damages, pre and post judgment interest, attorneys' fees and

costs, and all relief allowed by law arising out of the Defendants' VOWA violations.

12.     Plaintiff individually asserts a claim for violation of the Virginia Misclassification Law. Plaintiff seeks damages and all relief allowed by law for Defendants' violation of the VML. Plaintiff reserves the right to amend to assert this claim for additional employees who may join the case.

13.     Plaintiff individually asserts claims for violation of the Virginia Whistleblower Protection Law, the FLSA antiretaliation provision, and wrongful discharge in violation of Virginia public policy. These claims arise from MEAR terminating Plaintiff because she complained to her supervisor, the Chief Operating Officer, that MEAR was violating the law by misclassifying her as an independent contractor when she was really an employee, and/or for refusing MEAR's order to sign a document incorrectly calling her an independent contractor because she was really an employee under the law.

14.     Plaintiff reserves the right to propose amended class definitions and/or sub-classes in her motions for collective action and/or class action certification, or to add class claims under Rule 23 of the Federal Rule of Civil Procedure, to the extent discovery warrants such amendments or subclasses.

## II.     JURISDICTION AND VENUE

15.     This Court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331, as well as 29 U.S.C. § 216 in that the Plaintiff may bring this action in any appropriate United States District Court.

16.     The Court has supplemental jurisdiction over the state law VOWA, VML, VWPL, and wrongful discharge in violation of public policy claims pursuant to 28 U.S.C. § 1367, as

these claims are so related to the FLSA claims they form part of the same case or controversy. In short, Defendants' pay policies and practices with respect to the misclassification of employees and non-payment of overtime allegedly violate the FLSA, VOWA, and VML, Plaintiff was terminated for reporting the misclassification issue common to the FLSA, VOWA, and VML claims, and Plaintiff's termination gives rise to claims under the federal FLSA's antiretaliation provision as well as the state law VWPL and wrongful discharge in violation of public policy claims.

17.     Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Civil Rule 3(C) since the acts and omissions giving rise to this lawsuit have taken place in this division in the Eastern District of Virginia. Plaintiff and similarly situated employees worked for Defendants in this division.

18.     Each Defendant is subject to personal jurisdiction in the Commonwealth of Virginia. Each Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over each Defendant to comply with traditional notions of fair play and substantial justice.

### III.    PARTIES

19.     Plaintiff Petrea is a resident of Virginia who was employed by Defendants in Virginia from approximately March 2010 to June 2018 and July 2019 through April 15, 2022 in a position called "Case Worker." At all times relevant, Plaintiff was an "employee" as defined in the FLSA, VOWA, VML, VWPL, and common law.

20.     Defendant Midnight Express Auto Recovery, Inc. ("MEAR") is a Virginia corporation with its principal office address (according to filings with the Virginia State

Corporation Commission) at 193 Mt. Hope Church Rd, PO Box 3351, Stafford, VA 22555 - 0000, USA. MEAR's office where Defendants, Plaintiff and other employees work is located at 47 Cool Spring Rd, Fredericksburg, VA 22405. Defendant MEAR is an "employer" as defined by the FLSA, VOWA, VML, VWPL, and common law.

21.     Upon information and belief, Defendants Stacey and Tony Willette are co-owners of MEAR. At all times relevant, these Defendants had ultimate authority over corporate operations as well as the terms and conditions of Plaintiff's and similarly situated employee's employment. Stacey and Tony Willette each meet the definition of "employer" as defined by the FLSA and VOWA, as well as the VML, VWPL, and common law.

22.     Defendant Stacey Willette ("Defendant Stacey Willette" or "the COO") is the Chief Operating Officer of MEAR and, upon information and belief, a co-owner of MEAR. She acted directly or indirectly on behalf of MEAR, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiff and similarly situated employees within the meaning of the FLSA and VOWA. She exerted operational and management control over MEAR, including day to day management. She was, and is, frequently present at, owned, directed, controlled and managed the operations at MEAR. She also controlled the nature, pay structure, and employment relationship of Plaintiff and the FLSA Collective and VOWA Collective. This Defendant has had, at all times relevant to this lawsuit, the authority to hire and fire employees at MEAR, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, she was responsible for the day-to-day affairs of MEAR. In particular, she was responsible for determining whether

6

MEAR complied with the FLSA and VOWA. Defendant Stacey Willette is an "employer" as defined by the FLSA and VOWA, as well as the VML, VWPL, and common law.

23.     Defendant Tony Willette ("Defendant Tony Willette" or "the President") is the President of MEAR and, upon information and belief, a co-owner of MEAR. He acted directly or indirectly on behalf of MEAR, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiff and similarly situated employees within the meaning of the FLSA and VOWA. He exerted operational and management control over MEAR, including day to day management. He was, and is, frequently present at, owned, directed, controlled and managed the operations at MEAR. He also controlled the nature, pay structure, and employment relationship of Plaintiff and the FLSA Collective and VOWA Collective. This Defendant has had, at all times relevant to this lawsuit, the authority to hire and fire employees at MEAR, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of MEAR. In particular, he was responsible for determining whether MEAR complied with the FLSA and VOWA. Defendant Tony Willette is an "employer" as defined by the FLSA and VOWA, as well as the VML, VWPL, and common law.

24.     At all times relevant, Defendants employed Plaintiff and other similarly situated workers.

25.     At all times relevant, Defendants exercised control over the terms and conditions of the employment of Plaintiff and other similarly situated workers.

26.     Plaintiff is informed, believes, and thereon alleges that Defendants' gross annual

sales made or business done is $500,000.00 or greater. Defendants operate in interstate commerce by, among other things, buying and/or selling goods and/or transacting business in multiple states, and/or by having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce in multiple states. Defendants' employees, including Plaintiff and similarly situated employees, were engaged in commerce and/or the production of goods for commerce.

27.     Plaintiff is informed and believes that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of their employees and agents, and the other Defendants, and are vicariously or strictly liable for the wrongful conduct of MEAR's employees and agents as alleged herein.

28.     Plaintiff is informed and believe, and on that basis allege that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respects thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiffs in that each of them exercised control over their wage payments and control over their duties.

29.     Plaintiff is informed and believes, and on that basis alleges that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

30.     At all times mentioned herein, each and every Defendant was the successor of the

8

other and each assumes the responsibility for the acts and omissions of all other Defendants.

**IV.     FACTUAL ALLEGATIONS**

**A.     Background – Defendant MEAR**

31.     Defendant MEAR is a repossession company. It specializes in repossessing vehicles and equipment for its clients. MEAR's clients are typically lienholders who retain the company to recover vehicles or equipment. MEAR's clients include lienholders located in states other than Virginia.

**B.     Defendants' Policy and Practice of Not Paying Overtime Compensation**

32.     From approximately March 2010 to June 2018 and July 2019 through April 15, 2022 Plaintiff Petrea was employed by Defendants.

33.     During the entire 11-year period of Plaintiff's employment, she and similarly situated employees worked for MEAR in its office in Fredericksburg, Virginia.

34.     At no time during Plaintiff's 11-year employment did Defendants ever post any notice or information about employees' rights under the Fair Labor Standards Act or state law or any other laws.

35.     During the entire 11-year period of Plaintiff's employment with Defendants she worked as a Case Worker.

36.     At any given time during the last 11 years, MEAR employs about three Case Workers, one Receptionist, one Transport Coordinator, one Office Assistant, one Lot Attendant, and eight Drivers.

37.     The Case Workers, Receptionist, Transport Coordinator, and Office Assistant ("Office Staff") all work and are required to work entirely in MEAR's office located at 47 Cool

Spring Road, Fredericksburg, VA 22405.

38.     The Lot Attendant works at MEAR's lot in Richmond.

39.     The Drivers work in the field, repossessing vehicles for MEAR.

40.     All Office Staff and the Lot Attendant are paid on an hourly basis.

41.     Plaintiff's most recent hourly rate was $17.50 per hour.

42.     Drivers are paid per vehicle that they repossess.

43.     Defendants do not pay overtime compensation to any employees.

44.     When Office Staff and the Lot Attendant work more than 40 hours in a week, which MEAR frequently requires, MEAR just pays them their straight hourly rate.

45.     When Drivers work more than 40 hours in a week, which MEAR frequently requires, they are still just paid per vehicle without any overtime compensation.

46.     All Office Staff, Lot Attendants, and Drivers are supervised by and report to Defendant MEAR's COO, Defendant Stacey Willette, and President, Defendant Tony Willette.

47.     The primary job duty of Case Workers is to send repossession orders that MEAR receives to MEAR's Drivers, and to keep MEAR's clients updated on the progress of the repossession process. MEAR's clients are lien holders, typically banks. The lienholders send repossession orders to MEAR through an online portal that MEAR subscribes to. MEAR's Case Workers check the portal. They send the orders to the Drivers, and keep the lien holders updated on the progress of the repossession.

48.     The primary job duty of the Receptionist is to answer phone calls and inquiries that come into the office.

49.     The primary job duty of the Transport Coordinator is to coordinate with Drivers

to schedule vehicles to either be picked up or delivered to various auctions.

50.     The primary job duty of the Office Assistant is to perform various clerical tasks for the COO around the office, including proofreading invoices, assisting with payroll, responding to client emails, and other tasks at the COO's instruction.

51.     The primary duty of the Lot Attendant is to check vehicles in and out of MEAR's lot.

52.     The primary job duty of Drivers is to repossess vehicles for MEAR's clients pursuant to the orders that MEAR receives through the online portal.

53.     In addition to their regular duties, MEAR requires all Office Staff to perform cleaning duties at the office each Friday. MEAR's COO calls this "your chores." MEAR often requires this work to be done off the clock and does not pay anything for this work.

54.     Office Staff, Lot Attendants, and Drivers do not have authority to negotiate with clients, negotiate prices, negotiate invoices, negotiate contracts, prepare budgets, or to make payments on behalf of the company. They do not have authority to decide the amount of fees to charge clients, or to negotiate fees. They do not have the authority to make purchases on behalf of MEAR or bind MEAR to contracts. They do not have the authority to negotiate with vendors. They do not have the authority to develop marketing strategies.

55.     All decisions on matters of significance are made by MEAR's COO and/or President.

56.     Office Staff, Lot Attendants, and Drivers do not have primary duties that involve the exercise discretion and independent judgment with respect to matters of significance.

57.     Defendants did not and do not pay Plaintiff or any employees the required

11

overtime premium when they work in excess of 40 hours per week. Based on Plaintiff's 11 years of experience working for Defendants, Plaintiff asserts Defendants had a policy and practice of not paying overtime compensation to any of MEAR's employees.

58.     When employees work more than 40 hours in a week, MEAR does not pay overtime compensation at 1.5 times the employees' hourly rates. Instead, it just pays straight time at the employees' regular hourly rates or per-vehicle rates.

59.     Plaintiff and similarly situated employees regularly work and worked more than 40 hours per week.

60.     During the entire 11-year period of Plaintiff's employment, she worked approximately **45 hours per week**. On Monday through Friday, she would start work at 8:00am and work until at least 5:00pm or whenever the COO permitted employees to leave. Office Staff were generally not permitted to take lunch breaks, although one person was sometimes permitted to leave to go pick up lunch for the rest of the Office Staff. Office Staff had to work through lunch. If Office Staff took any breaks of any length during the day, they were required to clock out. Plaintiff averaged about 45 hours per week during her entire employment.

61.     In addition to employees' usual duties, the COO frequently required Office Staff to clean the office, scrub toilets, clean sinks, mop the office, clean the kitchen, clean windows, dust the office, and vacuum the office, on Fridays before or after regular hours. The COO tells employees this is "your chores."

62.     The COO frequently would tell Office Staff, "I'm not giving you your paycheck until your chores are done." This work is often required to be off the clock.

63.     MEAR knew Plaintiff and similarly situated employees often worked more than

40 hours in a week because the time stamps on their time cards will show they worked these hours, the COO saw them working when they were required to work off the clock, and other reasons.

64.     MEAR did not pay Plaintiff or other employees overtime compensation when they worked in excess of 40 hours per week. Instead, it paid only straight time. Based on Plaintiff's 11 years of experience, Plaintiff asserts MEAR had and continues to have a policy and practice of not paying overtime compensation to any of its employees and misclassifying its employees as independent contractors.

65.     Even though Plaintiff and similarly situated employees worked more than 40 hours in a week, Defendants did not and does not pay them overtime compensation. Instead it pays only straight time for overtime recorded on the clock, and suffers or permits or requires Office Staff to perform weekly cleaning of the office off the clock for no compensation.

66.     Defendants had a policy and/or practice of not paying overtime compensation to Plaintiff and other similarly situated employees, for time worked in excess of 40 hours per week.

67.     MEAR's pay records and time records show its practice of not paying overtime compensation to Plaintiff and similarly situated employees.

68.     Defendants suffered and/or permitted Plaintiff and similarly situated employees to work more than 40 hours per week without overtime compensation.

69.     Defendants knew or should have known that MEAR's policy and/or practice of not paying overtime compensation for time worked in excess of 40 hours per week violated the overtime provisions of the Fair Labor Standards Act and the Virginia Overtime Wage Act, and other applicable laws.

**C.     Defendants' Knowledge of Overtime**

70.     MEAR requires Plaintiff and all other hourly employees to record their time using timecards. MEAR requires the employees to punch their cards on the machine each time they clock in or out. They turn in the timecards each Friday.

71.     Defendants knew or should have known Plaintiff and similarly situated employees worked more than 40 hours some weeks because, inter alia, the time shown on their timecards, time stamps on their computers/data entry, Defendants' practice of requiring employees to work through lunch and after hours, the fact that MEAR's COO and President can observe the employees working through lunch and after usual business hours, the fact that MEAR's COO requires the employees to clean the office under her supervision off the clock, and other reasons.

72.     Defendants had a policy and practice of not paying overtime compensation to Plaintiff and similarly situated employees, even though they worked in excess of 40 hours some weeks.

73.     Defendants regularly scheduled or required Plaintiff and similarly situated employees to work in excess of 40 hours per week.

74.     Plaintiff and similarly situated employees regularly worked in excess of 40 hours per week.

75.     If Defendants had maintained accurate employee time records, the records would show Plaintiff and similarly situated employees working in excess of 40 hours per week.

76.     Plaintiff and similarly situated employees were entitled to overtime compensation equal to one and a half times their regular rate of pay for all time worked in excess of 40 hours per week.

**D.     Defendants' Policy and Practice of Misclassifying Employees as Independent Contractors.**

77.     Since at least 2010, MEAR has misclassified all employees, including all Office Staff, Lot Attendants, and Drivers as "independent contractors."

78.     For the first two years of Plaintiff Petrea's employment, in 2010 and 2011, Defendants paid employees directly (but without tax withholdings, employee benefits, or overtime compensation) and issued form 1099s to the employees each year.

79.     Since approximately 2012, MEAR has created for each employee an LLC so that MEAR could pay each employee's LLC instead of paying the employee directly.

80.     The employees do not have LLCs before being hired by MEAR.

81.     After each employee is hired, MEAR's COO creates each employee's LLC at MEAR's office, on MEAR's computers, then gives each employee the LLC information and instructs the employee to take the information to a bank and open an account in the name of the LLC. MEAR then pays the LLC instead of the employee.

82.     MEAR's employees are not independent contractors. They are employees. MEAR controls virtually every aspect of the employment relationship, including but not limited to:

   a.     MEAR sets the employees' work schedule.

   b.     MEAR requires Office Staff to work at MEAR's office and the Lot Attendant at MEAR's lot.

   c.     MEAR controls which vehicles Drivers are to pick up and where to take them;

   d.     MEAR's COO or President tells the employees what to do and how to do

it.

     e.    MEAR tells the employees what computers to use (MEAR's computers), what phones to use (MEAR's phones), what trucks to use (MEAR's trucks) and what software to use (Recovery Database Network, which MEAR has a subscription to).

     f.    MEAR requires Office Staff and Lot Attendants to clock in and clock out on timecards each day.

     g.    MEAR requires employees to ask for time off, and decides whether or not to grant the employees any time off.

     h.    MEAR determines the employees' job duties, and will add duties, like cleaning the toilets.

     i.    MEAR's COO tells the employees, "You have to do whatever we tell you to do when you're on our clock."

     j.    MEAR hires employees through employment job postings, and has the authority to fire employees. MEAR refers to firing employees as "cancelling your contract."

     k.    MEAR's COO is always checking in on employees in the office to monitor their work and make sure they are doing a good job.

     l.    MEAR trains all employees on how to do their jobs. Employees, like Plaintiff, typically come into the company knowing nothing about the repossession industry and are trained on the job by MEAR.

     m.    MEAR's COO frequently gives employees orders like "you're not allowed to speak" for periods of time and requires employees to work in silence.

16

       n.    MEAR has all the control over the employees.

83.    MEAR's employees have no opportunity for profit or loss depending on managerial skill. They are just paid straight hourly rates (Office Staff and Lot Attendant) or per-vehicle rates (Drivers).

84.    MEAR's employees do not invest anything in equipment or material. All the equipment and materials they use, including computers, telephones, other office equipment, trucks, and all other equipment and materials belong to MEAR. MEAR has a subscription to the software the employees use. Office Staff work in MEAR's office. The Lot Attendant works at MEAR's lot. The Drivers use MEAR's trucks.

85.    MEAR's employees do not perform work requiring a high level of skill. The company hires employees with no experience in the repossession industry, then trains them to do the tasks they want them to do.

86.    MEAR has long-term, permanent relationships with its employees. All employees typically work 40+ hours each week, for years. Plaintiff Petrea worked for the company for more than 11 years.

87.    The work of MEAR's employees is integral to its business. MEAR would not be able to do its business without its Case Workers, Receptionist, Transport Coordinator, Office Assistant, Lot Attendants, and Drivers. The employees do the work that MEAR is retained to do.

88.    MEAR does not classify any of its employees as employees.

89.    MEAR uses a timecard timekeeping system for hourly employees. Employees are required to punch in and punch out each day, getting time stamps on their card, and to turn in their cards on Fridays.

17

90.     The economic reality is that MEAR's employees are not in business for themselves. They are employees of MEAR.

91.     MEAR intentionally misclassified Plaintiff and similarly situated employees as independent contractors to lower labor costs by not paying overtime, insurance, employer-side payroll taxes, and other benefits to which employees are entitled.

**E.     Additional Allegations**

92.     Plaintiff and similarly situated employees were not employed in any bona fide executive, administrative, or professional capacity.

93.     Based on the nature of Plaintiff's and similarly situated employees' job duties, there is no FLSA or VOWA exemption that applies to preclude them from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

94.     Defendants willfully violated the FLSA and VOWA by not paying Plaintiff and similarly situated employees overtime compensation.

95.     At all relevant times Defendants intended to deprive Plaintiff and similarly situated employees of the overtime pay to which they were entitled to under the FLSA and VOWA, or acted with reckless disregard for their rights under the FLSA and VOWA.

96.     At all relevant times Defendants knowingly failed to pay Plaintiff and similarly situated employees the overtime pay to which they were entitled to under the FLSA and VOWA.

97.     The FLSA requires employers to "post and keep posted a notice explaining the [FLSA]... in conspicuous places." 29 C.F.R. § 516.4.

98.     Since the beginning of Plaintiff's employment in 2010 to the present, MEAR has not at any time posted the required notice explaining employee FLSA rights or rights of

employees under state wage laws.

99.     Plaintiff asserts that Defendants' failure to post and keep posted in a conspicuous place the required information about employee FLSA rights entitles Plaintiff and similarly situated employees to equitable tolling of the statute of limitations for FLSA claims. *See Cruz v. Maypa*, 773 F.3d 138, 146-47 (4th Cir. 2014) (tolling FLSA statute of limitations for 6 years due to "the plaintiff's employer's failure to post statutory notice of workers' rights" under the FLSA); *Kim v. Lee,* No. 1:18-CV-1350, 2019 WL 8892575, at *3 (E.D. Va. Apr. 15, 2019) (discussing *Cruz*; equitable tolling where Defendants did not post the FLSA notice).

### F.     MEAR's Termination of Plaintiff's Employment

100.    At all times relevant Plaintiff Petrea performed her job well and met MEAR's expectations.

101.    On April 8, 2022, the COO attached to Plaintiff's paycheck a document which purported to incorrectly classify Plaintiff as an independent contractor rather than an employee. The document contained various incorrect statements about Plaintiff's employment with MEAR, all of which were aimed at incorrectly classifying Plaintiff as an independent contractor even though she was really an employee under the law. MEAR had required Plaintiff and similarly situated employees to sign similar inaccurate documents in the past as a condition of their employment.

102.    Plaintiff denies the accuracy of the statements in any such documents purporting to classify her and similarly situated employees as independent contractors, and does not incorporate the contents of any such documents into this pleading.

103.    The COO instructed Plaintiff to sign the new document.

104.    Over the next few days, Plaintiff researched online the difference between independent contractors and employees under the law.

105.    On April 15, 2022, Plaintiff told the COO that she was not going to sign the document because it was not true and pointed out that Defendants were violating the law by misclassifying her as an independent contractor because she was really an employee. Plaintiff pointed out given the level of control MEAR exercised over her employment, she was not an independent contractor under the law.

106.    Plaintiff pointed out to the COO that MEAR was violating the law by classifying her as an independent contractor when she was really an employee, given her hourly pay and the amount of control that Defendants exercised over her employment.

107.    MEAR's COO (Defendant Stacey Willette) responded to Plaintiff by immediately terminating her employment.

108.    In terminating Plaintiff's employment, MEAR's COO knew that Plaintiff was reporting to her in good faith that MEAR was violating the law by classifying her as an independent contractor when she was really an employee.

109.    In terminating Plaintiff's employment, MEAR's COO knew that Plaintiff was refusing the COO's order to sign a document that purported to misclassify her as an independent contractor when she was really an employee, in violation of the law, and that Plaintiff was informing the COO that this was the reason she was refusing the order to sign the document.

110.    MEAR terminated Plaintiff's employment because she reported in good faith to a supervisor, the COO, that MEAR was violating the law by classifying her as an independent contractor when she was really an employee.

111.    Alternatively, MEAR terminated Plaintiff's employment because she refused the COO's order to sign a document that purported to misclassify her as an independent contractor when she was really an employee, in violation of the law, and Plaintiff informed the COO that this was the reason she was refusing the order to sign the document.

112.    Defendants' actions as set forth above have caused Plaintiff to suffer damages. As a direct and proximate result of the wrongful conduct of Defendants, Plaintiff has suffered mental anguish, pain and suffering, emotional distress, humiliation and shame, damage to her career and professional reputation and other damages, lost wages, and incurred legal expenses.

113.    The conduct of Defendants as alleged herein was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages in an amount sufficient to deter future similar conduct by Defendants and their agents and others in the future.

114.    Defendants' conduct alleged herein, including the misclassification of Plaintiff and similarly situated employees, failure to pay overtime compensation to Plaintiff and similarly situated employees, and the termination of Plaintiff's employment because she reported she was being misclassified as an independent contractor when she was really an employee under the law, and/or for refusing to sign a document purporting to incorrectly classify her as an independent contractor, in violation of the law, was done with knowledge of and reckless disregard for Plaintiff's and similarly situated employees' rights under the FLSA, VOWA, VML, VWPL, and Virginia public policy.

## V.    FLSA COLLECTIVE ACTION ALLEGATIONS

115.    Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as Representative Plaintiff on behalf of herself and all other similarly situated employees.

The similarly situated employees are as follows:

a.      **FLSA Collective**: all persons who have been employed by Defendants as Office Staff, including Case Workers, Receptionists, Office Assistants, and Transport Coordinators, or in positions having substantially similar job duties, within three years prior to this action's filing, or longer if equitable tolling is granted, to the trial of this action (the "FLSA Collective Period").

116.    Defendants employ, and have employed, multiple persons who fit the above definition and were paid under a similar pay scheme which deprived employees of overtime pay for time they worked in excess of 40 hours each week.

117.    These employees perform, and have performed, work which entitles them to payment of overtime compensation which they have not received.

118.    Within the past three years, and indeed the past 11-plus years, Plaintiff and similarly situated employees were subject to a common plan or policy of Defendants to avoid paying overtime wages by not paying overtime wages to these employees who were entitled to overtime wages. Instead, Defendants pay only straight time for overtime.

119.    Defendants' pay records and timecard records, time stamps from employees' data entry, software login and logout, and emails, among other evidence, show Defendants' policy and practice of not paying overtime compensation to employees who fit the above definition.

120.    Defendants compensated, and continue to compensate, those similarly situated to Plaintiff on a uniform compensation basis common to Plaintiff and other persons performing similar job functions.

121.    Defendants' pay operations are centrally managed as a single enterprise, and Defendants' employees meeting the above definition are subject to common payroll practices.

22

122.     Defendants' policy of not paying overtime compensation amounted to a willful or reckless disregard of the employees' rights under the FLSA.

123.     Defendants had no good faith basis to believe that not paying overtime compensation to these employees was somehow allowable under the FLSA.

124.     Plaintiff asserts that Defendants' willful disregard of the overtime wage laws described herein entitles Plaintiff and similarly situated employees to the application of the three (3) year limitations period, or longer if equitable tolling is granted.

125.     Plaintiff's job duties, and the job duties or those similarly situated to Plaintiff, are not exempt from the coverage of the FLSA.

126.     At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

127.     Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and as such, notice should be sent to the Collective. There are numerous similarly situated current and former employees of Defendants who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

A.     **Notice of Filing of Consent to Become a Party Plaintiff**

128.     Plaintiff hereby files her Written Consent to Become Party to Collective Action Under 29 U.S.C. § 216. Plaintiff's Written Consent Form is attached as Exhibit 1.

VI.     **VOWA COLLECTIVE ACTION ALLEGATIONS**

129.     Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. §

23

216(b) as Representative Plaintiff on behalf of herself and all other similarly situated employees. The similarly situated employees are as follows:

    a.   **VOWA Collective**: All persons who have been employed by Defendants as Office Staff, including Case Workers, Receptionists, Office Assistants, and Transport Coordinators, or in positions having substantially similar job duties, at any time from July 1, 2021 to the trial of this action (the "VOWA Collective Period").

130.    Defendants employs, and has employed, multiple persons who fit the above definition and were paid under a similar pay scheme which deprived employees of overtime pay for time they worked in excess of 40 hours each week.

131.    These employees perform, and have performed, work which entitles them to payment of overtime compensation which they have not received.

132.    Within the VOWA Collective Period, Plaintiff and similarly situated employees were subject to a common plan or policy of Defendants to avoid paying overtime wages by not paying overtime wages to these employees who were entitled to overtime wages.

133.    Defendants' pay records and timecard records, time stamps from employees' data entry, software login and logout, and emails, among other evidence, show Defendants' policy and practice of not paying overtime compensation to employees who fit the above definition.

134.    Defendants compensated, and continues to compensate, those similarly situated to Plaintiff on a uniform compensation basis common to Plaintiff and other persons performing similar job functions.

135.    Upon information and belief, Defendants' pay operations are centrally managed as a single enterprise, and Defendants' employees meeting the above definition are subject to

24

common payroll practices.

136.    Defendants' policy of not paying overtime compensation amounted to a willful or reckless disregard of its employees' rights under the VOWA.

137.    Defendants had no good faith basis to believe that not paying overtime compensation was somehow allowable under the VOWA.

138.    Plaintiff asserts that Defendants' pay policies and practices and conduct described herein constitute Defendants "knowingly failed to pay wages to an employee in accordance with … § 40.1-29.2 [the VOWA]" within the meaning of VA Code § 40.1-29(J) and (K).

139.    Plaintiff's job duties, and the job duties or those similarly situated to Plaintiff, are not exempt from the coverage of the VOWA.

140.    At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the VOWA.

141.    Defendants is liable under the VOWA for failing to properly compensate Plaintiff and the VOWA Collective, and as such, notice should be sent to the Collective. There are numerous similarly situated current and former employees of Defendants who have been denied overtime pay in violation of the VOWA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

**A.      Notice of Filing of Consent to Become a Party Plaintiff**

142.    Plaintiff hereby files her Written Consent to Become Party to Collective Action Under 29 U.S.C. § 216 and VA Code §§ 40.1-29(J) and 40.1-29.2. Plaintiff's Written Consent Form is attached as Exhibit 1.

## VII.   CLAIMS

### COUNT I: VIOLATIONS OF FAIR LABOR STANDARDS ACT
**(Overtime Violations)**
**(On Behalf of Plaintiff and FLSA Collective)**
**(Against All Defendants)**

143.    Plaintiff alleges and incorporate by reference the preceding paragraphs as if fully set forth herein.

144.    At all times relevant herein, each Defendant has been, and continues to be, an "employer," and Plaintiff and each similarly situated employee has been, or continues to be, an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

145.    The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours per week. 29 U.S.C. § 207. As such, Plaintiff and all similarly situated employees are entitled to overtime compensation at one and one-half times their regular rate of pay for work performed in excess of forty hours per week.

146.    By failing to compensate Plaintiff and similarly situated employees with overtime compensation for their overtime hours worked, Defendants have violated, and continue to violate the FLSA.

147.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

148.    Plaintiff hereby files her Written Consent to Become Party to Collective Action Under 29 U.S.C. § 216 and VA Code §§ 40.1-29(J) and 40.1-29.2. Plaintiff's Written Consent Forms is attached as Exhibit 1.

149.    Plaintiff seeks damages for herself and all others similarly situated in the amount

of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and

attorneys' fees incurred in investigating and prosecuting this claim, all other relief available

under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

### COUNT II: VIOLATIONS OF VIRGINIA OVERTIME WAGE ACT
**(Overtime Violations)**
**(On Behalf of Plaintiff and VOWA Collective)**
**(Against All Defendants)**

150.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully

set forth herein.

151.    Plaintiff currently does not know whether there are a sufficient number of

potential Plaintiffs who worked for Defendants in Virginia to satisfy the numerosity requirement

for a class or subclass under Fed. R. Civ. P. 23(a)(1). A collective action for the VOWA claims

is appropriate pursuant to VA Code §§ 40.1-29.2 and 40.1-29(J). Should discovery reveal as

sufficient number of similarly-situated Virginia workers to satisfy the Rule 23 numerosity

requirement, Plaintiff reserves the right to amend to assert the VOWA claims as Rule 23 class

action claims.

152.    The Virginia Wage Payment Act ("VWPA") provides for collective actions for

violations of the VOWA: "[I]f an employer fails to pay wages to an employee in accordance with

this section or § 40.1-29.2 [VOWA], the employee may bring an action, individually, jointly,

with other aggrieved employees, or on behalf of similarly situated employees as a collective

action consistent with the collective action procedures of the Fair Labor Standards Act, 29

U.S.C. § 216(b)[.]" VA Code § 40.1-29 (J).

153.    Plaintiff brings this VOWA count as a statutorily-authorized collective action

pursuant to VA Code § 40.1-29(J), on behalf of herself and the VOWA Collective as defined

27

above.

154.    For time period of July 1, 2021 through present, each Defendant has been, and continues to be, an "employer," and Plaintiff and each similarly situated employee, has been, or continues to be, an "employee" within the meaning of the Virginia Overtime Wage Act, VA Code § 40.1-29.2(A).

155.    The VOWA requires, "For any hours worked by an employee in excess of 40 hours in any one workweek, an employer shall pay such employee an overtime premium at a rate not less than one and one-half times the employee's regular rate, pursuant to 29 U.S.C. § 207." VA Code § 40.1-29.2(B). As such, Plaintiff and all similarly situated employees are entitled to overtime compensation at one and one-half times their regular rates of pay for work performed in excess of forty hours per week.

156.    By failing to compensate Plaintiff and similarly situated employees with overtime wages for their hours worked in excess of 40 hours per week, Defendants have violated, and continue to violate the VOWA.

157.    The VOWA provides, "Any employer that violates the overtime wage requirements of this section shall be liable to the employee for all remedies, damages, or other relief available in an action brought under subsection J of § 40.1-29 [The Virginia Wage Payment Act, VA Code § 40.1-29, ("VWPA")]." VA Code § 40.1-29.2(F).

158.    Defendants' pay policies and practices and conduct described herein constitute Defendants "knowingly failed to pay wages to an employee in accordance with … § 40.1-29.2 [the VOWA]" within the meaning of VA Code § 40.1-29(J) and (K).

159.    Plaintiff hereby files her Written Consent to Become Party to Collective Action

Under 29 U.S.C. § 216 and VA Code §§ 40.1-29(J) and 40.1-29.2. Plaintiff's Written Consent Form is attached as Exhibit 1.

160.    Plaintiff seeks damages on behalf of herself and the VOWA Collective in the amount of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, as well as "an amount equal to triple the amount of wages due and reasonable attorney fees and costs" pursuant to VA Code §§ 40.1-29.2(F) and 40.1-29(J), all other relief available under the VOWA and VWPA, and all other such legal and equitable relief as the Court deems just and proper.

### COUNT III: VIOLATIONS OF VIRGINIA MISCLASSIFICATION LAW
#### (On Behalf of Plaintiff Petrea Only)
#### (Against Defendant MEAR Only)

161.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

162.    Plaintiff currently does not know whether there are a sufficient number of potential Plaintiffs who worked for Defendants in Virginia to satisfy the numerosity requirement for a class or subclass under Fed. R. Civ. P. 23(a)(1). Should discovery reveal as sufficient number of similarly-situated Virginia workers to satisfy the Rule 23 numerosity requirement, Plaintiff reserves the right to amend to assert the VML claims as Rule 23 class action claims.

163.    Plaintiff reserves the right to amend to add claims under the VML for plaintiffs who opt-in to the VOWA Collective or FLSA Collective.

164.    At all times relevant, Defendant MEAR has been, and continues to be, an "employer," and Plaintiff and each similarly situated employee, has been, or continues to be, an "employee" within the meaning of the VML.

165.    The Virginia Misclassification Law ("VML"), VA Code § 40.1-28.7:7, provides that "[a]n individual who has not been properly classified as an employee may bring a civil action for damages against his employer for failing to properly classify the employee if the employer had knowledge of the individual's misclassification."

166.    The VML, VA Code § 40.1-28.7:7 further provides that "[i]f the court finds that the employer has not properly classified the individual as an employee, the court may award the individual damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action.

167.    Defendants improperly classified Plaintiff and similarly situated individuals as independent contractors rather than employees, resulting in damages to Plaintiff and similarly situated employees and a denial to Plaintiff and similarly situated individuals of overtime premiums, wages, salaries, and other employment benefits including insurance coverage and insurance benefits (including unemployment insurance benefits), employer-side payroll taxes, and other benefits which they would have been entitled to receive if they had been properly classified as employees. Plaintiff seeks all relief allowed by law for Defendants' violation of the VML.

### COUNT IV: VIOLATIONS OF VIRGINIA WHISTLEBLOWER PROTECTION LAW
#### (On Behalf of Plaintiff Petrea Only)
#### (Against Defendant MEAR Only)

168.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

169.     The Virginia Whistleblower Protection Law ("VWPL"), at VA Code § 40.1-27.3(A), provides that "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: 1. Or a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official; 2. Is requested by a governmental body or law-enforcement official to participate in an investigation, hearing, or inquiry; 3. Refuses to engage in a criminal act that would subject the employee to criminal liability; 4. Refuses an employer's order to perform an action that violates any federal or state law or regulation and the employee informs the employer that the order is being refused for that reason; or 5. Provides information to or testifies before any governmental body or law-enforcement official conducting an investigation, hearing, or inquiry into any alleged violation by the employer of federal or state law or regulation."

170.     The VWPL, at VA Code § 40.1-27.3(C), further provides that if an employer violates the VWPL, "[t]he court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs.

171.     At all times relevant, Defendant MEAR has been, and continues to be, an "employer," and Plaintiff was an "employee" within the meaning of the VWPL.

172.     Misclassifying employees as independent contractors is unlawful under both

31

federal and state law.

173.    The requirement that employers must classify employees as employees is fundamental to both our federal and state tax system and to the federal and state wage and hour laws, among many other federal and state laws.

174.    Misclassifying employees as independent contractors violates numerous federal and state statutes and regulations, including but not limited to the Virginia Misclassification Law, § 40.1-28.7:7, IRS regulations including 26 C.F.R. § 31.3121(d)-1, the Fair Labor Standards Act, the Virginia Overtime Wage Act, the Virginia Minimum Wage Act, the Virginia Wage Payment Act, IRS laws and regulations governing the payment of payroll taxes and other taxes, Virginia tax laws and regulations, worker's compensation laws, unemployment benefits laws, and many other federal and state laws and regulations.

175.    MEAR violated VA Code § 40.1-27.3 by discharging Plaintiff because she engaged in activity protected by the VWPL.

176.    Plaintiff in good faith reported to her supervisor, the COO, that MEAR was violating the law by misclassifying her as an independent contractor when she was really an employee.

177.    MEAR terminated Plaintiff because she in good faith reported to the COO that MEAR was violating the law by misclassifying her as an independent contractor when she was really an employee.

178.    Alternatively, MEAR terminated Plaintiff because she refused Defendants' order to sign a document that purported to misclassify her as an independent contractor when she was really an employee and contained other inaccurate statements, in violation of the law, and

32

Plaintiff informed Defendants that this was the reason she was refusing the order to sign the document.

179.    As a result of Defendants' violation of the Virginia Whistleblower Protection Law, Plaintiff has suffered and continues to suffer lost wages and damages.

180.    Plaintiff seeks an injunction to restrain continued violation of the VWPL, reinstatement or front pay, compensation for lost wages, benefits, and other remuneration, compensatory and punitive damages, interest, lost wages, reasonable attorney fees and costs, and all other relief allowed by law for Defendants' violation of the VWPL.

### COUNT V: *BOWMAN* CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
### (On Behalf of Plaintiff Petrea Only)
### (Against Defendants MEAR and Stacey Willette Only)

181.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

182.    The VWPL, VA Code § 40.1-27.3(A), provides that "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: 1. Or a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official; 2. Is requested by a governmental body or law-enforcement official to participate in an investigation, hearing, or inquiry; 3. Refuses to engage in a criminal act that would subject the employee to criminal liability; 4. Refuses an employer's order to perform an action that violates any federal or state law or regulation and the employee informs the employer that the order is being refused for that reason;

or 5. Provides information to or testifies before any governmental body or law-enforcement official conducting an investigation, hearing, or inquiry into any alleged violation by the employer of federal or state law or regulation."

183.    MEAR terminated Plaintiff Petra because she in good faith reported to the COO that MEAR was violating the law by misclassifying her as an independent contractor when she was really an employee.

184.    Alternatively, MEAR terminated Plaintiff because she refused Defendants' order to sign a document that purported to misclassify her as an independent contractor when she was really an employee and contained other inaccurate statements, in violation of the law, and Plaintiff informed Defendants that this was the reason she was refusing the order to sign the document.

185.    Plaintiff was terminated from employment in violation of the public policy underlying the VWPL and/or in violation the public policy underlying the many state laws that require employers to classify employees as employees, such as VOWA, the Virginia Minimum Wage Act, the Virginia Wage Payment Act, state tax laws, state workers' compensation laws, and state unemployment benefits laws, among many others.

186.    Plaintiff was, therefore, terminated in violation of *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

187.    "Virginia recognizes a common law tort claim of wrongful discharge in violation of established public policy [under *Bowman*] against an individual who was not the plaintiff's actual employer but who was the actor in violation of public policy and who participated in the wrongful firing of the plaintiff, such as a supervisor or manager. *VanBuren v. Grubb*, 284 Va.

34

584, 593, 733 S.E.2d 919, 924 (2012).

188.    With respect to Plaintiff's termination, MEAR's COO, Defendant Stacey Willette, was the actor in violation of public policy and who, as Plaintiff's supervisor, participated in the wrongful firing of Plaintiff.

189.    Defendant Stacy Willette is, therefore, individually liable for the wrongful discharge of Plaintiff in violation of public policy under *Bowman* and *Van Buren*.

190.    Defendant MEAR, as an employer of Plaintiff, is also liable for the wrongful discharge of Plaintiff in violation of public policy under *Bowman*.

191.    As a result of the termination of her employment, Plaintiff has suffered lost income and other damages.

192.    Plaintiff seeks an injunction to restrain continued violation of the public policy underlying the VWPL and other state laws, reinstatement or front pay, compensation for lost wages, benefits, and other remuneration, compensatory and punitive damages, interest, lost wages, reasonable attorney fees and costs, and all other relief allowed by law for the termination of her employment in violation of *Bowman*.

### COUNT VI: FLSA RETALIATION
### (On Behalf of Plaintiff Petrea Only)
### (Against All Defendants)

193.    Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

194.    The FLSA's antiretaliation provision, 29 U.S.C. § 215(a)(3), makes it unlawful for "any person … (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any

proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]"

195.    Intracompany complaints are protected activity under the FLSA antiretaliation provision.  *Minor v. Bostwick Lab'ys, Inc*., 669 F.3d 428, 438 (4th Cir. 2012) ("[T]he remedial purpose of the FLSA requires intracompany complaints to be considered protected activity within the meaning of its antiretaliation provision.").

196.    Misclassifying employees as independent contractors violates the FLSA with its overtime and minimum wage protections for employees.

197.    Plaintiff engaged in an activity protected by the FLSA by complaining to the COO that MEAR was violating the law by misclassifying her as an independent contractor when she was an employee and/or by refusing MEAR's order to sign a document that inaccurately classified Plaintiff as an independent contractor because that misclassification violated the law.

198.    When Plaintiff pointed out to the COO that MEAR was violating the law by misclassifying her as an independent contractor when she was really an employee, one aspect of the law that she was complaining MEAR violated was the FLSA, which applies only to employees, since Plaintiff regularly worked overtime without receiving the overtime premiums required by the FLSA and MEAR misclassified her as an independent contractor in part to avoid paying her overtime.

199.    Plaintiff suffered adverse action by Defendants subsequent to or contemporaneous with such protected activity, when Defendants immediately terminated her employment because of her protected activity, within a few minutes of her protected activity.

200.    A causal connection exists between Plaintiffs' protected activity and Defendants'

adverse action of terminating her. Plaintiff was terminated because she complained to the COO that MEAR was violating the law by misclassifying her as an independent contractor when she was really an employee and/or because she refused the COO's order to sign a document that inaccurately classified Plaintiff as an independent contractor because that misclassification violated the law.

201.    As a result of Defendants' retaliation, Plaintiff has suffered lost income and other damages.

202.    Plaintiff seeks an injunction to restrain continued violations of the FLSA, reinstatement or front pay, compensation for lost wages, benefits, and other remuneration, compensatory and punitive damages, liquidated damages, interest, lost wages, reasonable attorney fees and costs, and all other relief allowed by law for Defendants' termination of her employment in violation of the FLSA.

## DAMAGES

203.    As a result of Defendants' conduct and termination of Plaintiff's employment alleged herein, Plaintiff has suffered psychological injuries, mental anguish, personal and professional humiliation, emotional distress, loss of enjoyment of life, loss of past and future wages and benefits, curtailment of career opportunities, and other damages.

204.    Defendants' conduct described herein was willful, deliberate, malicious, and outrageous, so as to make an award of punitive damages appropriate.

## FLSA RELIEF REQUESTED

Wherefore, Plaintiff on behalf of herself and the FLSA Collective requests the following relief against Defendants, individually, collectively, jointly, and severally::

37

A.      An order conditionally certifying a group or groups of putative collective action members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

B.      Judgment that Plaintiff and all similarly situated employees were non-exempt employees entitled to protection under the FLSA;

C.      Judgment against Defendants for violations of the overtime and/or minimum wage provisions of the FLSA;

D.      Judgment that Defendants' violations as described above were willful;

E.      Money damages for all unpaid overtime and/or minimum wage compensation owed to Plaintiff and similarly situated employees;

F.      Liquidated damages in an amount equal to all unpaid overtime and/or minimum wages owed to Plaintiff and similarly situated employees;

G.      Equitable tolling to extend the applicable limitations period;

H.      Pre-judgment and post-judgment interest;

I.      Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

J.      Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the FLSA or other applicable law;

K.      An injunction to restrain continued violations of the FLSA;

L.      Equitable and injunctive relief as allowed by law; and

38

M.      Any and all further relief permissible by law.

**VOWA Relief Requested**

Wherefore, Plaintiff on behalf of herself and the VOWA Collective requests the following relief against Defendants, individually, collectively, jointly, and severally:

A.      An order conditionally certifying a group or groups of putative collective action members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

B.      Judgment that Plaintiff and similarly situated employees were non-exempt employees entitled to protection under the VOWA;

C.      Judgment against Defendants for violations of the overtime provisions of the VOWA;

D.      Judgment that Defendants' violations as described above were willful;

E.      Judgement that Defendants' violations as described herein constitute Defendants "knowingly failed to pay wages to an employee in accordance with [the VWPA or VOWA]" within the meaning of VA Code § 40.1-29(J) and (K);

F.      Money damages for all unpaid wages, unpaid minimum wages, and overtime compensation owed to Plaintiff and similarly situated employees;

G.      Liquidated damages in an amount equal to all unpaid wages, minimum wages, and overtime owed to Plaintiff and similarly situated employees;

H.      Pre-judgment and post-judgment interest;

I.      Reasonable attorneys' fees and costs including expert fees expended in the

prosecution of this case and the investigation that preceded it;

J.      An amount equal to "triple the amount of wages due and reasonable attorney fees and costs" pursuant to VA Code §§ 40.1-29.2(F) and 40.1-29(J);

K.      Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the VOWA, VWPA, or other applicable law;

L.      An injunction to restrain continued violations of the VOWA;

M.      Equitable and injunctive relief as allowed by law; and

N.      Any and all further relief permissible by law.

### VML Relief Requested

Wherefore, Plaintiff on behalf of herself and similarly situated individuals requests the following relief against Defendant MEAR:

A.      Judgment that Plaintiff and similarly situated employees were misclassified as independent contractors;

B.      Judgment against Defendant for violations of the VML;

C.      An injunction to restrain Defendant from further violations of the VML;

D.      Damages for Plaintiff and similarly situated employees in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, resulting from Plaintiff's and similarly situated employees' misclassification as independent contractors;

E.      Pre-judgment and post-judgment interest;

F.      Reasonable attorneys' fees and costs including expert fees expended in the

prosecution of this case and the investigation that preceded it;

G.      Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or violation of the VML or other applicable law;

H.      Equitable and injunctive relief as allowed by law; and

I.      Any and all further relief permissible by law.

### VWPL, Wrongful Discharge, and FLSA Retaliation Relief Requested

Wherefore, Plaintiff individually requests the following relief against Defendant MEAR (on VWPL claims), against Defendants MEAR and Stacey Willette, individually, collectively, jointly, and severally (on the wrongful discharge in violation of public policy claims) and against all Defendants, individually, collectively, jointly, and severally (on the FLSA retaliation claim):

A.      Judgment against Defendants for violations of the VWPL, FLSA antiretaliation provision, and wrongful discharge in violation of public policy;

B.      An injunction to restrain continued violation of the VWPL, FLSA antiretaliation provision, and violations of public policy;

C.      Reinstatement or front pay;

D.      Compensation for lost wages, benefits, and other remuneration, compensatory and punitive damages, interest, lost wages, reasonable attorney fees and costs, and all other relief allowed by law for Defendants' violation of the VWPL, FLSA antiretaliation provision, and wrongful discharge in violation of public policy;

E.      Damages for emotional distress, humiliation, loss of enjoyment of life, pain and suffering, and/or other compensatory damages in an amount to be determined at trial;

F.      Punitive damages in an amount to be determined at trial, in an amount sufficient

to deter future similar conduct by Defendants and their agents and others in the future.

       G.      Liquidated damages;

       H.      Pre-judgment and post-judgment interest;

       I.       Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

       J.       Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or violation of the VWPL, common law, FLSA, or other applicable law;

       K.      Equitable and injunctive relief as allowed by law; and

       L.      Any and all further relief permissible by law.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all claims and issues so triable.

Respectfully submitted,

KRISTIE PETREA,
individually and on behalf of all others similarly situated,
By Counsel

Dated: June 2, 2022

/s/Timothy Coffield
Timothy Coffield (VSB 83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com
Counsel for Plaintiff

## CERTIFICATE

I HEREBY CERTIFY that unless service is waived a true and correct copy of the foregoing Complaint will be delivered to a qualified process server with instructions to serve the same upon the Defendants or their authorized agents at the following addresses, or any other addresses where Defendants may be found:

MIDNIGHT EXPRESS AUTO RECOVERY, INC.
SERVE:   Tony Andrew Willette, Registered Agent
              47 Cool Spring Rd, Fredericksburg, VA 22405

TONY WILLETTE
SERVE:   Tony Andrew Willette, individually
              47 Cool Spring Rd, Fredericksburg, VA 22405

STACEY WILLETTE
SERVE:   Stacey Jill Willette, individually
              47 Cool Spring Rd, Fredericksburg, VA 22405


/s/Timothy Coffield
Counsel for Plaintiff